## JOSEFA RUIZ DE NOBLE ET AL., Complainants,

*v.*

## ELISA GALLARDO Y SEARY ET AL., Respts.

---

San Juan, Equity, No. 524.

REFACCION AND LIMITATIONS.

Refaccion Contract—Definition.

    1. A refaccion credit, arising from a refaccion contract, is one by law attached to a loan which brings into existence or preserves that which otherwise would not exist or would perish. It goes back through all the Spanish law to Roman times, and applies in Porto Rico especially to agricultural crops.

Same—Third Parties.

    2. Under this principle a tacit mortgage preferential lien is given superior to all creditors not specially privileged.

Same—Extent.

    3. Where the contract on its face refers to making a crop, the lien is limited by law to the crop and to the interest the planter has in the land. It must be definite and public.

Refaccion—Registration.

    4. Before the present registration law such a contract must be noted in the Anotaduria of Mortgages.

Registration—Registrars.

    5. The duties of a registrar are administrative rather than judicial, and, although his opinions are persuasive, they do not con-

Ruiz de Noble v. Gallardo y Seary.

clude a law court. Particularly is this so if there are two opposite decisions.

Contracts—Prescription.

6. After thirty-five years it is not material whether the thirty-years statute of repose or the twenty-years statute as to mortgages applies. Either is sufficient as to land, and the shorter period applies as to personal obligations.

Keeping Alive—Liens.

7. A general mention of liens does not necessarily include keeping alive a refaccion contract.

Anotaduria—Mortgage Law.

8. A transaction antedating the mortgage law is governed by the provisions as to an Anotaduria de Hipotecas.

Opinion filed June 6, 1914.

---

*Mr. N. B. K. Pettingill* for intervening petitioner.

*Messrs. Travieso & Yriarte* for defendants.

HAMILTON, Judge, delivered the following opinion:

This is a petition in the nature of a bill of intervention, to which answers have been filed, and a plea of the statute of limitations has been interposed. It is now submitted upon the merits, the only evidence noted being documentary. It consists of exhibits and papers filed in the main case, and also certificate of registrar of property at San Juan of inscription of the finca of "San José Cacigue" in 1912, and of the entries in the old Anotaduria of Mortgages in 1864.

The facts of the case were examined by this court and are found in an opinion by Judge Rodey dated July 6, 1909.

Ruiz de Noble v. Gallardo y Seary.

It seems that in the year 1864 Ramon Ruiz Gandia was in debted to Rufino de Goenaga, ancestor of the interveners, in the sum of $6,063.35, for which a notarial instrument was given, now claimed to be a refaccion. This was recorded in the Anotaduria de Hipotecas. It is claimed to cover the plantation of San José de Cacique. The actual ownership, however, of Gandia, had been not of the whole, but of an undivided interest, but he also leased the interest of his cotenants. The same contract was continued for several years, and, while the bill alleges that it is still unpaid, the answer sets up that it has been paid. Said Gandia became bankrupt, and in the course of the proceedings Ricardo Gallardo, ancestor of the defendants, bought the plantation. It is alleged on the one side, and denied on the other, that he recognized the lien now in question.

Several defenses are set up to the bill, among them that the instrument in question was not a mortgage of the land, that the claim has prescribed and has been paid. There is no question that the original contract was recorded in 1864 as a refaccion mortgage, but at the time of opening new books of record a new registrar in 1906 declined to authorize the transfer of the old record to the new. The original contract is not in evidence under the ruling of the court, but the renewal of the contract dated 26th of November, 1864, was properly recorded, and therefore admitted in evidence, and by recital seems substantially to incorporate the excluded paper.

1. Was this a refaccion contract? The instrument of 1864 recites that that of October 31, 1862, was "a deed of refaccion," and the new instrument recites that the "parties have agreed by common consent to extend by this document the first contract of refaccion signed on said 31st day of October, 1862, to the 31st

Ruiz de Noble v. Gallardo y Seary.

day of August of 1865 next." The parties therefore considered the new instrument as a refaccion contract, the changes in the new instrument not affecting this part of the transaction. The contract says expressly that "the aforesaid Ruiz Gandia agreed to faithfully pay said sum (of 6,063 and $^{35}\!/_{100}$ pesos) with the crops manufactured by the said estate, and if not sufficient he shall pay with the sugar cane sprouts belonging to him, and which by this contract are encumbered with the crops, and Ruiz shall also pay all the sums which Goenaga shall advance him thereafter. . . . All the crop, that is to say sugar manufactured by the estate San José de Cacique, is hereby mortgaged, specially and expressly, and if it should not be sufficient, then the sugar cane sprouts of the said estate, in order that it shall be satisfied." And it continues that "Gandia cannot make any other agreement of refaccion with any other person during the time agreed upon in the present deed of extension, and until the debt to Goenaga shall have been completely paid."

"By *refaccion credit* is meant that which arises from the *refaccion contract,* which is so called after the Latin verb *reficere,* to remake, to make over again, to bring into existence that which without the help of new works is going to perish.

"Amongst the Romans, such credit gave only a right of action *in personam,* unless it was expressly stipulated that the property to be repaired or constructed should be mortgaged, except when the money advanced was to be used for rebuilding a building almost in ruins, in which case a tacit mortgage was recognized in favor of the creditors, which mortgage was called, *ne urbs ruinis deformetur.*

"Laws 26 and 28, title 13, Partida 5, merely declared that the 'refaccion creditor' should have a legal mortgage upon the

Ruiz de Noble v. Gallardo y Seary.

house that had been rebuilt or repaired, but without determining how the execution of the contract was to be proven, nor the conditions that should appear in the contract, the only requirements being the receipt of the money for the work to be done and the investment of the amount in the said work." Sentences of the supreme court of Spain, of December 1, 1868, and of April 13, 1882. 2 Galindo & Escosura's Comentaries on Mortgage Law, page 521.

So far as its express terms go, the lien given is on the crop and ratoons, and in Porto Rico at least the ratoons hardly renew themselves for more than three or four years. "To the fulfilment of all that has been set forth in the present deed, the appearing party hereto binds his present and future property, with the clause which allows courts to have the same carried into execution, . . . renounces all laws and rights in his favor," says the contract, and it also expresses the "understanding that the general obligation as to property is not to abolish or impair the special obligation, and on the other hand the latter is not to abolish or impair the former, as Goenaga can make use of either as he may deem best; the crop . . . is hereby mortgaged, specially and expressly."

2. It is contended that the provision as to "general obligation" refers to a tacit mortgage which the law gave to the refaccion creditors upon the real estate benefited. In this way it is claimed that, while the terms of the contract refer to crop and ratoons only, they also refer to the general law, which extends the lien to real property.

This has been held by the supreme court of Spain applicable to building a railroad track. 60 Jurisprudencia Civil, 909, Dec. 30, 1886. It has also been held that "there was conceded

Ruiz de Noble v. Gallardo y Scary.

by the ancient legislation applied in the present case to the refaccion creditors a tacit mortgage and preference upon the thing subject to the refaccion superior to all creditors not specially privileged." 63 Jurisprudencia Civil, 837, May 26, 1888.

So, as to pipes furnished to a water company, wherein it was held that both the Roman law and the Partidas recognized the doctrine of tacit mortgage and preferential lien upon the "finca refaccionada" for all indebtedness "que hayan servido para comprar, fabricar, ó reparar navo, ó edificar casa, ó comprar tierra ú otras cosas semejantes."

3. The cases cited go somewhat upon the principle of salvage in admiralty, giving a tacit lien upon vessels, houses, or lands for the money used in building or preserving them. It cannot be said, however, that it is at all clear that, when the contract on its face refers to making a crop, it is to be construed as applicable to the land, the more especially where, as in this case, the party making the refaccion contract was the owner of only an undivided interest in the land. It is true that he was in control of the whole property, but the lien recitals should probably be limited to the interest which he had, that is to say, ownership as to an undivided interest, and leasehold as to the rest. So far as appears, the leasehold must have long since expired.

"Law 3, title XVI. Book X. of the Novisima Recopilación, declared that in order to avoid frauds, suits, and damages to purchasers or other persons having an interest in mortgaged properties, an entry should be made in the registry of mortgages of every instrument containing a special or express mortgage or encumbrance of real property, and provided at the same

VII. Porto Rico—10.

Ruiz de Noble v. Gallardo y Seary.

time that the mortgaged property should be designated therein by an expression of the names, area, location, and boundaries; and that the term real property should be taken to include, besides houses, hereditaments, and other rights in the realty, the annuities (*censos*) and other perpetual rights which might be the subject of an encumbrance or mortgage; and that in case the registration should be omitted, the said instruments should not be used as evidence at the trials or outside of the trial, for the purpose of foreclosing the mortgages.

"From such legal provisions it must be inferred:

"1. That a general mortgage over all of the properties of the debtor had been left without force or effect, inasmuch as, the registration thereof not being required, it was supposed that there could be no fraud nor suits nor damages to any purchaser or party interested in the land, which would not carry with it the burden of the mortgage, when transmitted to a third party.

"2. That inasmuch as the mortgaged properties had to be designated by an expression of their names, area, location, and boundaries, future goods or properties could not be the subject of a mortgage, because they could not be designated in the manner provided by law.

"3. That personal property could not be the subject of a mortgage, because the law referred exclusively to real property and to rights that are real in their nature.

"4. That this law introduced in our mortgage system the requirements of specialty and publicity." 2 Diccionario de Legislacion Hipotecaria y Notarial, 67.

4. It is alleged that the contract was accordingly noted in Book 19 of the old Anotaduria of Mortgages, and that the debt

Ruiz de Noble v. Gallardo y Seary.

was recited as a refaccion debt for advances made for agricultural purposes.

Under the Spanish law, as under the present Porto Rican law, the registrar had semi-judicial powers, and if he declined to register an instrument an appeal lay from his decision. In this case, however, he registered the paper. There is no citation made showing that this bound any except the parties to the instrument.

5. Furthermore, if this registration was to be regarded as a precedent, it was neutralized by a subsequent registrar. When, in 1912, it was sought to transfer the old registration above to the new registry, the present registrar declined on the express ground that the paper actually placed a lien only upon products to be manufactured, and did not place any encumbrance upon the property. The Anotaduria, therefore, was said to have been given a wider scope than was proper, and therefore a mere cautionary notice, good for a limited time, was entered. No appeal was taken from this decision.

Whatever be the powers of the registrar, however, they are not beyond re-examination by this court when rights are affected that are in suit here. The registrar's office is rather administrative than judicial. 80 Jurisprudencia Civil, 907, No. 210. It should be held to determine matters prima facie, and a decision by a registrar may be persuasive, but in this instance there are two which come to opposite conclusions. They cannot be said to throw much light upon the subject or to control the case.

6. The interval between the contract in 1864 and the petition of intervention in 1909 is thirty-five years. It would not seem material whether the thirty-years statute of repose or the

Ruiz de Noble v. Gallardo y Seary.

twenty-years statute covering mortgages should be held to apply. Either would be sufficient. It is true that the contract under the foregoing views was not a mortgage except to the extent of the undivided interest in the property. The remainder of the debt would be a personal obligation and barred under § 1865 of the Civil Code of Porto Rico.

7. The complainant, however, seeks to avoid the question of prescription by allegation of recognition of the claim in a deed of cancelation of mortgage executed by Gallardo on August 10, 1883. That instrument refers to liens, but does not necessarily include the claim now in suit. It says that "Gallardo being the owner of the property subject to the liens thereon, he has been paying the same in different instalments." The claims mentioned are said to be those according to the books of the old Anotaduria, and a certificate of the registrar is that this old book contained a refaccion in favor of Goenaga. This is too general to amount to an express recognition of the claim at bar and stop the running of the statute of limitations or the principle or statute of repose.

8. This case is not governed by what is called the mortgage law, as that was adopted after accrual of the rights now urged at bar. 64 Jurisprudencia Civil, 256. The law governing the Anotaduria de Hipotecas is much older. It goes back to the Novisima Recopilación, title 16, Law 3. It was abolished by royal decree of February 28, 1879, but that did not affect the rights in this case.

It follows from the above discussion that the bill of intervention is not sustained by the proof and must be dismissed.